John A. HILLMAN and Janet Hillman, individually, and Janet Hillman as Personal Representative of the Estate of Julie G. Hillman, a deceased minor, Appellants,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY and Maury Hafford, Appellees.

No. S–1669.

Supreme Court of Alaska.

July 1, 1988.

Michael J. Schneider, Mestas & Schneider, P.C., Anchorage, for appellants.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Following the death of their eleven year old daughter, John and Janet Hillman filed suit against Nationwide Mutual Fire Insurance Company for benefits under the uninsured motorists and medical payments sections of their automobile insurance policy issued by Nationwide. Nationwide denied liability, claiming that the policy provides no coverage in this instance. After making several important but non-dispositive rulings, the superior court granted Nationwide's motion for summary judgment and entered a final judgment dismissing the Hillmans' complaint. This appeal followed.

The facts are undisputed. On August 14, 1983, eleven year old Julie Hillman was driving her family's three wheel all-terrain vehicle (ATV) in the Nancy Lake area near Wasilla. The accident occurred when Julie attempted to cross Long Lake Road, and the ATV was struck by a truck. Julie died as a result of the collision.

The driver of the truck was uninsured. At the time of Julie's accident, however, the Hillmans had a Nationwide auto policy which listed three insured vehicles: a 1977 Datsun pickup, a 1976 Plymouth, and a 1978 GMC pickup. The ATV was not listed. Each listed vehicle had uninsured motorists coverage. The policy provided, in the "Uninsured Motorists" section under the bold-faced heading "coverage," that Nationwide

> will pay bodily injury damages that you or your legal representatives are legally entitled to recover from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the ownership, maintenance, or use of the uninsured vehicle.... Relatives living in your household also have this protection.

In the same section of the policy several "COVERAGE EXCLUSIONS" are listed. The pertinent exclusion is number four:

> This Uninsured Motorists insurance does not apply as follows:
>
> ....
>
> 4. It does not apply to bodily injury suffered while occupying a motor vehicle owned by you or a relative living in your household, but not insured for Uninsured Motorist coverage under this policy. It does not apply to bodily injury from being hit by any such vehicle.

The final relevant policy language is the definition of "motor vehicle:"

> In this policy:
>
> ....
>
> 6. the words "MOTOR VEHICLE" mean a land vehicle designed to be driven on public roads. They do not include vehicles operated on rails or crawler-treads. *Other motor vehicles designed for use mainly off public roads are covered when used on public roads.*

(Emphasis added). This definition is under the bold-faced heading "DEFINITIONS."

About one year after the accident, Mrs. Hillman wrote to Nationwide to initiate a claim under the policy. In September,

1984, Nationwide's claims adjuster, Maury Hafford, denied the Hillmans' claim, stating that coverage under the policy did not extend to the ATV. The Hillmans wrote Nationwide several more times, but Nationwide continued to deny coverage. Eventually, the Hillmans filed suit. On cross-motions for summary judgment, the superior court determined that the Nationwide policy did not provide coverage for the accident, and entered final judgment dismissing the Hillmans' complaint.

## DISCUSSION

### A. WHAT DOES "COVERED" MEAN IN THE MOTOR VEHICLE DEFINITIONS PARAGRAPH?

■ Initially, it is apparent that this accident falls within the general "Coverage" language of the "Uninsured Motorists" section of the policy. Julie suffered bodily injury resulting from an accident with a driver of an uninsured vehicle. It is equally apparent, however, that if Julie were occupying a motor vehicle owned by the Hillmans but not insured under the policy, "Uninsured Motorists Exclusion" number four would apply, and there would be no policy coverage. The Hillmans' position is that the final sentence of the motor vehicle definition, "[o]ther motor vehicles designed for use mainly off public roads *are covered* when used on public roads" (emphasis added), constitutes an affirmative grant of coverage to persons operating off road vehicles on public roads. Nationwide, on the other hand, argues that the words "are covered" in the definition mean that off road vehicles are included in the "motor vehicle" definition when they are operated on public roads. Thus, they conclude that Julie was operating an owned, but uninsured, "motor vehicle" and her accident is expressly excluded under the policy.

Insurance policies are contracts. Thus, the liability of an insurer is generally determined by the terms of the policy which it has issued. *State v. Underwriters at Lloyds, London,* 755 P.2d 396 (Alaska 1988). However, since an insurance policy is a contract of adhesion, it will be con-

strued according to the principle of reasonable expectations: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." *Id.* (quoting R. Keeton, *Basic Text on Insurance Law* § 6.3(a), at 351 (1971)).

Another rule of construction applicable to insurance policies is that ambiguities in the contract language should be resolved in favor of the insured. *U.S. Fire Ins. v. Colver,* 600 P.2d 1, 3 (Alaska 1979). However, this rule does not apply to every case in which the parties disagree as to the interpretation of a term; ambiguity exists "only when the contract, taken as a whole, is reasonably subject to differing interpretations." *Modern Constr. v. Barce, Inc.,* 556 P.2d 528, 529 (Alaska 1976), *quoted in Jarvis v. Aetna Casualty & Sur.,* 633 P.2d 1359, 1363 (Alaska 1981).

We find that the only reasonable interpretation of the "motor vehicle" definition is that advanced by Nationwide, *i.e.,* that the sentence on which the Hillmans rely means that motorized vehicles designed mainly for use *off* public roads, such as an ATV, are "motor vehicles" within the policy definition when they are used *on* public roads.[1] The definitional section is distinct from the coverage provisions, and cannot logically be read as providing any substantive additions to the coverage section of the policy.

Further, we have no basis for concluding from extrinsic evidence that an insured in the position of the Hillmans would have held an objectively reasonable expectation of coverage. Mrs. Hillman stated to the insurance adjuster investigating this case that she and her husband had thought that insurance was unobtainable for the ATV.

### B. IS THE UNINSURED OWNED VEHICLE EXCLUSION PROHIBITED BY STATUTE?

■ Alternatively, the Hillmans argue that even if the ATV is a "motor vehicle"

---

**1.** The Hillmans concede that the ATV was a motor vehicle "designed for use mainly off pub-

lic roads" and that it was "used on" a public road at the time of the accident.

under the policy, the uninsured owned vehicle exclusion set out as exclusion number 4 in the uninsured motorists section of the policy, *supra* p. 3, is impliedly prohibited by law. In 1983, AS 28.20.440 provided: [2]

(b) The owner's policy of liability insurance shall

. . . .

(2) insure the person named and every other person using the vehicle ... against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the vehicle [as provided herein] ... ;

(3) contain coverage in the amounts set out in (2) of this subsection for the protection of the persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury or death arising out of the ownership, maintenance or use of the uninsured motor vehicle, except that this coverage may be waived in writing by the insured on or before the effective date of the policy.

The Hillmans argue that the uninsured owned vehicle exclusion contravenes this statute.

There is extensive case law on the question whether statutory sections similar to AS 28.20.440(b)(3) relating to the scope of uninsured motorists coverage preclude giving effect to similar uninsured owned vehicle exclusions. The Supreme Court of Arizona, in *Calvert v. Farmer's Insurance Co. of Arizona,* 144 Ariz. 291, 697 P.2d 684 (1985), has listed some twenty-six states [3] which have refused to give effect to uninsured owned motor vehicle exclusions.[4] There is also contrary authority, though it is a distinct minority view.[5]

We align ourselves with the majority position on this question. Our statute prohibited coverage narrower than that which was statutorily prescribed. As the Supreme Court of Florida stated in a similar case:

Insurers or carriers writing automobile liability insurance and reciprocal uninsured motorist insurance are not permitted *by law* to insert provisions in the

---

**2.** At the time of the accident no uninsured motorist coverage written in Alaska could be narrower than prescribed by this statute. AS 21.-89.020.

**3.** *See Stephens v. State Farm Mut. Auto. Ins. Co.,* 508 F.2d 1363 (5th Cir.1975); *State Farm Auto Ins. Co. v. Reaves,* 292 Ala. 218, 292 So.2d 95 (1974); *Aetna Ins. Co. v. Hurst,* 2 Cal.App.3d 1067, 83 Cal.Rptr. 156 (1969); *Harvey v. Travelers Indemn. Co.,* 188 Conn. 245, 449 A.2d 157 (1982); *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229 (Fla.1971); *Bass v. State Farm Mut. Auto. Ins. Co.,* 128 Ga.App. 285, 196 S.E.2d 485 (1973), *aff'd,* 231 Ga. 269, 201 S.E.2d 444 (App.1973); *Kau v. State Farm Mut. Ins. Co.,* 58 Haw. 49, 564 P.2d 443 (1977); *Doxtater v. State Farm Mut. Auto. Ins. Co.,* 8 Ill.App.3d 547, 290 N.E.2d 284 (1972); *State Farm Mut. Auto. Ins. Co. v. Robertson,* 156 Ind.App. 149, 295 N.E.2d 626 (1973); *Lindahl v. Howe,* 345 N.W.2d 548 (Iowa 1984); *Barnett v. Crosby,* 5 Kan.App.2d 98, 612 P.2d 1250 (1980); *Elledge v. Warren,* 263 So.2d 912 (La.App.1972); *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980); *Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 294 N.W.2d 141 (1980); *Nygaard v. State Farm Mut. Auto. Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974); *Lowery v. State Farm Mut. Auto. Ins. Co.,* 285 So.2d 767 (Miss.1973); *Otto v. Farmers Ins. Co.,* 558 S.W. 2d 713 (Mo.App.1977); *Jacobson v. Implement Dealer Mut. Ins. Co.,* 196 Mont. 542, 640 P.2d

908 (1982); *State Farm Mut. Auto. Ins. Co. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971); *Beek v. Ohio Casualty Ins. Co.* 73 N.J. 185, 373 A.2d 654 (1977), *aff'd,* 135 N.J.Super. 1, 342 A.2d 547 (App.Div.1975); *Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 533 P.2d 100 (1975); *Ady v. West American Ins. Co.,* 69 Ohio St.2d 593, 433 N.E.2d 547 (1981); *Cothren v. Emcasco Ins. Co.,* 555 P.2d 1037 (Okla.1976); *State Farm Mut. Auto. Ins. Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978); *Hogan v. Home Ins. Co.,* 260 S.C. 157, 194 S.E.2d 890 (1973); *Allstate Ins. Co. v. Meeks,* 207 Va. 897, 153 S.E.2d 222 (1967); *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wash.2d 327, 494 P.2d 479 (1972); *Richards v. State Farm Mut. Auto. Ins. Co.,* 122 Wis.2d 172, 361 N.W.2d 680 (1985); *see also* A. Widiss, *A Guide to Uninsured Motorist Coverage,* § 2.9 (1969 & Supp.1981); Annotation, *Uninsured Motorist Coverage: Validity of Exclusion of Injuries Sustained By Insured While Occupying "Owned" Vehicle Not Insured By Policy,* 30 A.L.R.4th 172 (1984).

**4.** With the decision in *Calvert,* Arizona became the twenty-seventh state.

**5.** *See Dullenty v. Rocky Mountain Fire & Casualty,* 111 Idaho 98, 721 P.2d 198 (1986); *Employers' Fire Ins. Co. v. Baker,* 119 R.I. 734, 383 A.2d 1005 (1978); *Broach v. Members Ins. Co.,* 647 S.W.2d 374 (Tex.App.1983).

policies that they issue that exclude or reduce the liability coverage prescribed *by law* for the class of persons insured thereunder who are legally entitled to recover damages from owners or operators of motor vehicles because of bodily injury.

*Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229, 234 (Fla.1971). All that the statutory coverage requires is that the person injured be insured and that he or she be entitled to recover damages from the operator of the uninsured motor vehicle arising out of the use of the uninsured motor vehicle. Those conditions are met in this case. Statutory coverage bears no relationship to the occupancy of any particular motor vehicle by the person insured. For the policy to impose as a coverage limitation a requirement that the person insured not be occupying an owned uninsured vehicle plainly conflicts with the mandated coverage:

> The purpose of the statute is to protect completely, those willing to accept its protection, from all harm, whatever their status—passenger, driver, pedestrian—at the time of injury, produced by uninsured motorists. The only restrictions are that the plaintiff must be an insured, the defendant motorist uninsured, and that plaintiff be legally entitled to recover.

*Elledge v. Warren,* 263 So.2d 912, 918–19 (La.App.1972).

> They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick.
>
> . . . .
>
> . . . [O]nce uninsured motorist coverage is purchased, the insured and his relatives insured for liability have insured motorist protection under all circumstances. Uninsured motorist coverage, like no fault coverage, is personal and portable.

*Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 294 N.W.2d 141, 152 (1980) (footnote omitted).

■ Nationwide points to a statutory change now contained in AS 28.20.445(d):

(d) Uninsured and underinsured motorists coverage does not apply to bodily injury or death or damage to or destruction of property of an insured

(1) while occupying a motor vehicle owned by, but not insured by, the named insured or the insured's spouse or relative residing in the same household. . . .

This section took effect on January 1, 1985, more than a year after the accident in question. Nationwide argues that this change must be read as a clarification of pre-existing law, rather than a change in law.

We reject this argument for two reasons. First, an "amendment to an unambiguous statute is generally presumed to indicate a substantive change in the law." *Torkko/Korman/Engineers v. Penland Ventures,* 673 P.2d 769, 773–74 (Alaska 1983).

Second, the inquiry as to whether a legislature which has amended a statute intends to change or merely clarify the statute is usually fruitless. While the legislature is fully empowered to declare present law by legislation, it is not institutionally competent to issue opinions as to what a statute passed by an earlier legislature meant. If the legislature were in some form to declare its opinion as to the meaning of prior law, that declaration would be entitled to the same respect that a court would afford to, for example, an opinion of a learned commentator; that is, the court would examine the reasoning offered in support of the opinion and either reject or accept it based on the merit of the reasons given. However, instances where the legislature offers reasons in support of an opinion as to the meaning of prior law are very rare. It is possible to argue that the legislature has knowledge superior to a disinterested commentator because there may be some legislators in the current legislature who were also members of the legislature which passed the prior law and thus have special insight into the intent of the legislature. However, the force of this is dispelled when one considers that it is not permissible to allow a legislator to testify on the

question of his unexpressed legislative intent or on the unexpressed legislative intent of others. *Kenai Peninsula Borough School Dist. v. Kenai Peninsula Educ. Assoc.*, 572 P.2d 416 (Alaska 1977).

In the present case, AS 28.20.440(b)(2) was enacted in 1966, whereas AS 28.20.445 was enacted in 1984. The 1984 legislation was not accompanied by any language or committee reports expressing an opinion as to the meaning of the 1966 statute. Thus, even if we could ascertain what the collective judgment of the 1984 legislature was as to the meaning of the 1966 act, we would have no grounds for giving weight to that opinion.

## C. MEDICAL PAYMENTS

■ A separate section of the Hillmans' policy provided for medical payments coverage. The Hillmans contend that the medical payments coverage is applicable based on the "are covered" language in the definition of "motor vehicle."

For the reasons set forth in part A above, this position is rejected.

## D. ARBITRATION

■ Before ruling that the policy provided no uninsured motorist or medical payments coverage, the trial court held that Nationwide had not waived its right to arbitrate the underlying uninsured motorists claim. This ruling is challenged by the Hillmans on appeal. The ruling did not encompass the question of coverage, but included questions of negligence, comparative fault, damages, whether the driver of the truck was uninsured, and whether the claim is barred by a statute of limitations. The trial court concluded that although "Nationwide acted in bad faith in failing to disclose the availability of the arbitration procedure in four separate pieces of correspondence to Mrs. Hillman," arbitration should proceed because the Hillmans were represented by counsel who "simply made a calculated decision to attempt to obtain relief through the court system, knowing that the policy actually required dispute resolution through arbitration." Noting

authority to the effect that a plaintiff cannot claim waiver when the plaintiff initiates court action in violation of the arbitration clause,[6] the trial court concluded "that none of the litigants herein has clean hands. The balance tips in favor of submitting appropriate issues to the contractually mandated arbitration process in light of the absence of demonstrated prejudice to the plaintiffs and the strong policy favoring arbitration." We can find no error in the trial court's reasoning or conclusion and thus affirm on this point.

## E. HAS NATIONWIDE WAIVED DEFENSES WHICH IT DID NOT SPECIFICALLY SET FORTH IN CORRESPONDENCE WITH THE HILLMANS?

■ The trial court also ruled that Nationwide had not waived all of its defenses not specifically set forth in its correspondence with the Hillmans. The Hillmans claim that this was error.

Waiver has been defined as an express or implied voluntary and intentional relinquishment of a known or existing right. *See National Tea Co. v. Commerce & Industry Ins. Co.*, 119 Ill.App.3d 195, 74 Ill. Dec. 704, 456 N.E.2d 206 (1983); *Arctic Contractors, Inc. v. State*, 564 P.2d 30 (Alaska 1977). When waiver is to be implied from a party's conduct, that conduct must be clear and unambiguous. *National Tea*, 119 Ill.App.3d 195, 74 Ill.Dec. 704, 456 N.E.2d 206 (1983).

The parties in this case both signed a "non-waiver agreement" which provided in part:

> NOW, THEREFORE, it is understood and agreed between the Insured and the Company that the Company may by its representatives proceed to investigate the said accident, negotiate the settlement of any claim, or undertake the defense of any suit growing out of said accident, without prejudice to the rights of the said Company....

This language negates an intent to waive defenses. No reasons or authorities are

---

**6.** *See Nuclear Installation v. Nuclear Services,* 468 F.Supp. 1187, 1194 (E.D.Pa.1979).

submitted as to why the agreement should not be given effect, and we are aware of none. We affirm the trial court's ruling.

## F. DID THE TRIAL COURT ERR IN SUBMITTING NATIONWIDE'S STATUTE OF LIMITATIONS DEFENSE TO THE ARBITRATOR?

■ The Hillmans argue that the trial court erred in submitting Nationwide's statute of limitations defense to the arbitrator. Though neither party states which statute of limitations they are referring to, we assume that they are referring to the two-year period of limitations applicable to death[7] or injury[8] which would pertain to a claim by the Hillmans against the uninsured motorist.

There is no dispute that the Hillmans initiated a claim against Nationwide within two years of the accident. The insurance policy does not require the Hillmans to file suit against the uninsured motorist, and thus Nationwide cannot use that as a defense. If the Hillmans had failed to make a timely demand on Nationwide, such that Nationwide might have lost subrogation rights against the uninsured motorist, then Nationwide might have an arguable defense. This is not the case here. Thus we reverse the trial court's determination and hold as a matter of law that there is no statute of limitations defense applicable in this case.

## G. DID THE TRIAL COURT ERR IN HOLDING THAT THE HILLMANS WERE NOT ENTITLED TO STACK THE COVERAGE LIMITS IN THEIR POLICY?

■ Each of the Hillmans' three insured vehicles had uninsured motorists protection of $25,000 for bodily injury to each person. They paid a separate premium as to each vehicle for this coverage. They contend that these limits should be cumulated, or stacked, so that there is $75,000 available in uninsured motorists protection for their death claim.

The policy is clear in not permitting this. It states:

The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorist payment limits. Limits apply to each insured vehicle as stated in the Declarations. In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us.

The Hillmans cite *Werley v. United States Automobile Association,* 498 P.2d 112 (Alaska 1972) for the proposition that stacking of uninsured motorist coverages should be allowed, apparently regardless of policy language.

In *Werley,* an insured was injured by an uninsured motorist. The insured filed suit to recover under the uninsured motorist provisions of three policies covering his automobile, the driver of his automobile, and the driver's husband. We adopted the "Lamb–Weston"[9] rule that when an "other insurance" clause conflicts with an "other insurance" clause of another policy, the clauses should both be disregarded. We held that the insured was entitled to recover for his injuries up to the full limits of all three policies, and if the loss was less than the aggregate policy limits, it should be prorated according to the limits of all policies. *Werley,* 498 P.2d at 117–19.

The *Werley* decision was based on several factors. First, the "other insurance" provisions were circular. *Id.* at 117. Second, the language of the policies was ambiguous. *Id.* at 116. Third, not allowing stacking would result in a windfall for the insurance companies since they would have received premiums for no risk. *Id.* at 119.

This case is different. Here there is no circularity in language nor any ambiguity. The policy is clear in limiting coverage to the highest limit applicable to any of the insured vehicles. Further, there is no windfall, since the Hillmans' separate pre-

---

7. Alaska Statute 09.55.580.

8. Alaska Statute 09.10.070.

9. *Lamb–Weston Inc. v. Oregon Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110, *reh'g. denied,* 219 Or. 110, 346 P.2d 643 (1959).

miums bought protection for non-relatives who might be injured in each of the covered automobiles. *See Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679 (Texas 1974). For these reasons, we affirm the trial court's holding that the Hillmans are not entitled to stack the coverage in their policy.

### H. WRONGFUL DEATH

The Hillmans assert that they are entitled to assert individual claims for the wrongful death of their daughter. The trial court did not reach a decision on this issue, thus we have no occasion to address it.

REVERSED and REMANDED for further proceedings in accordance with this opinion.

BURKE, Justice, with whom MOORE, Justice, joins, dissenting.

I disagree with the holding that the uninsured owned vehicle exclusion contained in the Nationwide policy was invalid at the time of the accident.

If uninsured owned vehicle exclusions were invalid before 1985, an insured would have been able to buy a policy on one owned vehicle, pay premiums for only that vehicle, and, thereby, claim coverage for himself and others for any number of uninsured motor vehicles he owned. If we had prohibited insurers from limiting uninsured motorists coverage with such exclusions, we would have sanctioned this very behavior; we would have provided a disincentive for owners of multiple vehicles to insure each vehicle. A rule that discouraged vehicle owners from obtaining insurance for all their owned vehicles would have contravened the stated purpose of the Motor Vehicle Safety Responsibility Act. *See* AS 28.20.010 (motorists should be financially responsible for their acts, and thus they are encouraged to obtain full insurance coverage).

In holding an exclusionary clause similar to the one at issue here valid, the Idaho Supreme Court stated:

If an insure[r] is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous type of vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.

If the legislature had desired to place such a burden on insurance carriers, it could have required carriers to insure *all* applicants for motor vehicle liability policies at a uniform rate.... The legislature has not enacted such a requirement, and if it did so, undoubtedly owners of a single vehicle would sustain rate increases.

*Dullenty v. Rocky Mountain Fire & Casualty*, 111 Idaho 98, 106, 721 P.2d 198, 206 (1986). Similarly, there is no indication in AS 28.20.440 of a legislative intent to require insurers to increase their exposure and accept unknown and uncalculable risks. Thus, I would not interpret our statutory scheme as prohibiting insurers from excluding from coverage accidents resulting from the use of an owned but uninsured motor vehicle.

This interpretation is supported by the fact that AS 28.20.445(d), which took effect January 1, 1985, expressly approves the very exclusion at issue here: uninsured motorists coverage does not apply to losses incurred while occupying an uninsured owned vehicle. Section .445(d) did not replace or supplant section .440, nor did its addition to chapter 20 change section .440 in any substantive way. Rather, section .445 was merely added to chapter 20. *See* ch. 70, § 12, SLA 1984. It is fair to infer that this statutory addition was intended as a clarification of the existing law. In *U.S. Fidelity & Guaranty v. DeFluiter*, 456 N.E.2d 429, 432 (Ind.App.1983), the court, faced with a similar issue, stated:

[t]he Legislature through enactment of statutes defines public policy. Further, the subsequent amendment of a statute is indicative of the Legislature's intent at the initial enactment of that statute. Thus, it appears the Legislature always intended that insurance companies be allowed to limit their uninsured motorist

coverage in the matter at issue in the instant case.

(citations omitted). *See also Laborers and Hod Carriers Union, Local No. 341 v. Groothuis*, 494 P.2d 808, 811 (Alaska 1972) ("it is just as logical to regard the [newly adopted] amendment as a legislative clarification of the original language and not a substantial change").

In light of these considerations, I would hold that the uninsured owned vehicle exclusion was valid. Julie Hillman's injuries were incurred while she was occupying a motor vehicle owned by her family but not insured, and thus the accident was explicitly excluded from coverage by the policy terms. I would affirm the order granting summary judgment for Nationwide.