**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**Father James KOLB, Personal Representative of the Estate of Joyce Ann Stagdon, Defendant–Appellant.**

No. 88–3859.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1989.

Decided Sept. 5, 1989.

Edward A. Merdes, Anchorage, Alaska, for defendant-appellant.

Paul W. Waggoner, Anchorage, Alaska, Gerard R. LaParle, Fairbanks, Alaska, for plaintiff-appellee.

Before O'SCANNLAIN, LEAVY and TROTT, Circuit Judges.

TROTT, Circuit Judge:

The defendant, Father James Kolb ("Kolb"), personal representative of the estate of Joyce Ann Stagdon ("Stagdon"), appeals a grant of summary judgment for the plaintiff, State Farm Mutual Automobile Insurance Co. ("State Farm"). State Farm brought this action seeking declaratory relief concerning its obligation pursuant to the uninsured motorist coverage in its automobile insurance policy covering the deceased, Joyce Stagdon. The district court held that the estate was not entitled to recover under the decedent's State Farm uninsured motorist ("UM") policy. We affirm.

I

*FACTS AND PROCEEDINGS*

In the early morning hours of January 26, 1986, Joyce Stagdon drove her vehicle off Badger Road, a rural road near Fairbanks, Alaska, and into a ditch. Steven and Donna Cox, driving along Badger Road, noticed Stagdon walking along the road and offered assistance. The temperature outside was twenty degrees below zero. Stagdon entered the Coxes' vehicle, and they drove back to Stagdon's car. With his vehicle remaining partly in the road, Mr. Cox power-winched Stagdon's vehicle onto the shoulder of the road. A number of cars approached the scene, slowed, and had no difficulty passing the two vehicles. However, Leland Dittman, who was intoxicated, came around the curve and struck the Cox vehicle, crushing Stagdon between the Cox vehicle and her car. She died shortly thereafter.

Dittman was uninsured. The Coxes had liability insurance of $300,000. Stagdon herself carried automobile insurance through State Farm which included UM coverage of $100,000.

Despite demands by decedent's estate for payment of the $100,000 UM coverage, State Farm declined to pay on the basis that at the time of the demands it had no proof Mr. Dittman was uninsured. We are told that State Farm's reluctance was based on an unanswered question as to whether the car Dittman was driving was covered by a policy that apparently did give him some coverage. This question was eventually answered in the negative.

Subsequently, decedent's estate filed a motion and supporting memorandum in Alaska Superior Court to approve a $7,500 settlement with the Coxes and their insurance carrier. The memorandum stated that it appeared "the Coxes were performing in a 'good Samaritan' capacity" and that ' their liability in this case is certainly questionable." The memorandum further stated that Mrs. Stagdon's conduct could have constituted a contributing factor to the accident "to which a jury could conceivably attach some percentage of responsibility." The memorandum concluded that this was a case "which is best settled, as the estate might well receive no compensation against the Coxes and be required to pay their legal fees." On June 27, 1986, the state court issued an order approving the $7,500 settlement between the Coxes and decedent's estate as being "just and reasonable."[1]

State Farm then filed a declaratory judgment action in federal district court seeking a decree declaring that decedent's estate had no coverage for UM benefits under its policy. In its summary judgment motion, State Farm argued that decedent's estate entered into, without its consent, a settlement with persons "who may be liable" to it, and that its policy contained a clause excluding UM coverage when a settlement is entered into without its consent.[2] Based

1. In conjunction with the court-approved settlement, the parties executed a "Release and Covenant Not to Further Sue," in which decedent's estate promised to "release, quit, and forever discharge [the Coxes and their insurance carrier] ... for any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever ... relating to that

particular accident occurring on or about January 25, 1986."

2. The State Farm policy provided that there is no UM coverage:
FOR ANY INSURED WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE BODILY INJURY OR

on that exclusion and the failure of decedent's estate to obtain its consent before settling with the Coxes, State Farm argued that it was relieved of liability. The district court agreed and entered summary judgment in favor of State Farm.

On appeal, decedent's estate argues that (1) the "consent-to-settle" clause contravenes Alaska's UM statute and is therefore void, and (2) even assuming the "consent-to-settle" clause is valid, the Coxes, in light of their "good Samaritan" status, were not parties who "may be liable" within the ambit of the "consent-to-settle" exclusion.[3]

## II

### STANDARD OF REVIEW

■ The district court's grant of a motion for summary judgment is reviewed by this court de novo. Allstate Ins. Co. v. Gilbert, 852 F.2d 449, 451 (9th Cir.1988). Our review is governed by the same standard used by the district court under Fed. R.Civ.P. 56(c). Under Rule 56(c), summary judgment is proper when the pleadings and discovery, read in the light most favorable to the non-moving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id.

■ In this diversity case, Alaska law governs the substantive issues of state law. Farmers Alliance Mutual Ins. Co. v.

Miller, 869 F.2d 509, 511 (9th Cir.1989). Because we confront issues not yet decided by the Alaska Supreme Court, we must determine the result that court would reach if it were deciding the case. Id. We review de novo the conclusion of the district court sitting in the state whose law we are interpreting. Id. (citing In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc)).

## III

### DISCUSSION

"Consent-to-settle" clauses have been widely litigated, and the majority of courts have upheld their enforceability. See 8D Appelman, Insurance Law and Practice § 5132 (1981); 12A M. Rhodes, Couch on Insurance § 45:645 (2d ed. rev. 1981). The most frequently used basis for upholding these provisions is that they enable the insurer to protect its right of subrogation or offset. See Thomas, No–Consent–to–Settlement Clauses and Uninsured Motorist Coverage, 35 Federation of Insurance Counsel 71, 74 (1984).

The Alaska uninsured and underinsured motorist coverage statutes provide an insurer with a right of offset.[4] Alaska Stat. § 28.22.100 (1988) renders UM coverage inapplicable until all other sources of insurance have been exhausted. It provides in part:

PROPERTY DAMAGE AND THEREBY IMPAIRS OUR RIGHT TO RECOVER OUR PAYMENTS.
There is no dispute that State Farm's consent was neither sought nor obtained prior to the settlement reached with the Coxes and their insurer.

3. Alaska Stat. § 09.65.090 (1988), the so-called "good Samaritan" statute, provides:
(a) A person at a hospital or any other location who renders emergency care or emergency counseling to an injured, ill, or emotionally distraught person who reasonably appears to the person rendering the aid to be in immediate need of emergency aid in order to avoid serious harm or death is not liable for civil damages as a result of an act or omission in rendering emergency aid.
(d) This section does not preclude liability for civil damages as a result of gross negligence or reckless or intentional misconduct.

4. While the district court recognized that the Alaska UM statutes make no provision for sub-

rogation of claims by the insurer, the policy at issue contained a subrogation provision which stated:
Under the:
(1) loss of earnings coverage, and
(2) uninsured and underinsured motor vehicle coverage, if the damages are caused by an uninsured motor vehicle:
(a) we are subrogated to the extent of our payments to the proceeds of any settlement:
(i) the injured person recovers from any party liable for the bodily injury; or
(ii) you recover from any party liable for the property damage.
The parties on appeal apparently do not dispute the validity of the contractual subrogation provision as contained in the policy. Suffice it to say that we have found no Alaska authority which would expressly preclude such a provision.

(a) The uninsured and underinsured motorists coverage required in this chapter

(1) does not apply to bodily injury, sickness, disease, or death of an insured or damage to or destruction of property of an insured until the limits of liability bonds and policies that apply have been used up by payments or judgments or settlements

. . . .

Alaska Stat. § 28.22.100(a)(1) (1988). Furthermore, Alaska Stat. § 28.22.110(b)(2) (1988) reduces amounts payable under the UM coverage by "amounts paid or payable under *any* valid and collectible automobile medical payments insurance or bodily injury or death liability insurance ..." (emphasis added). Alaska Stat. § 28.22.100(a)(1) (1988).

The rationale of courts that have found "consent-to-settle" clauses void has generally been that by enacting a UM statute, the legislature has expressed an intent to allow one who is injured by an uninsured motorist the right to recover for his injury from any available source. Thus, a clause that restricts an insured's right to recover for damages caused by an uninsured motorist—as does a "consent-to-settle" clause—is against public policy. One commentator, however, has noted that such an interpretation of legislative intent is inappropriate if UM coverage is not mandatory:

A statute that mandates the inclusion of a certain feature (such as uninsured motorist coverage) in all automobile insurance contracts clearly evinces legislative disapproval of any clause restricting the effectiveness of the mandated feature (such as a no-consent clause). But if the above-mentioned feature is merely voluntary, there would seem to be no legislative intent to preclude use of it in some form other than a perfectly unrestricted form. It seems reasonable to say that if an insured is free to accept or reject unrestricted uninsured motorist coverage, then he is also free to opt for such coverage subject to a mutually agreed-upon condition or restriction such as a no-consent clause.

Thomas, *No–Consent–to–Settlement Clauses and Uninsured Motorist Coverage*, 35 Fed'n of Ins. Counsel at 72–3. Under this reasoning, the validity of the clause in the subject policy cannot reasonably be questioned, as the Alaska UM statutes allow an insured to waive UM coverage "in writing ... on or before the effective date of the policy." Alaska Stat. § 28.20.440(b)(3) (1984).

Decedent's estate relies to large extent on *Hillman v. Nationwide Mutual Fire Ins. Co.*, 758 P.2d 1248 (Alaska 1988) for the proposition that the "consent-to-settle" clause is contrary to public policy. *Hillman*, however, dealt with a UM policy provision which excluded coverage to insureds injured while operating owned, but noninsured. motor vehicles. *Id.* The Alaska Supreme Court found that the "uninsured owned vehicle exclusion" contravened the uninsured coverage prescribed by law, stating that "[s]tatutory coverage bears no relationship to the occupancy of any particular motor vehicle by the person insured." *Id.* at 1252. The court's conclusion followed the majority position on the issue. *See* Annotation, *Uninsured Motorist Coverage: Validity of Exclusion of Injuries Sustained By Insured While Occupying "Owned" Vehicle Not Insured By Policy*, 30 A.L.R. 4th 172 (1984). *Hillman* can hardly stand for the proposition that all restrictive insurance clauses, or consent-to-settle clauses in particular, are contrary to public policy and therefore void. Furthermore, Alaska Stat. § 28.22.500 (1984) specifically provides:

A provision in this chapter may not be interpreted to prohibit a motor vehicle liability policy from including limitations, conditions, exceptions, exclusions, or other provisions that do not violate the requirements of this chapter or other applicable laws.

■ Accordingly, we find the "consent-to-settle" provision in the subject policy serves a reasonable purpose. Under Alaska law, State Farm unquestionably had an interest in the claims against the Coxes for purposes of offsetting its uninsured liability. The "consent-to-settle" clause reasonably protects that interest. Decedent's es-

tate prejudiced State Farm's rights by entering into the settlement and release without giving State Farm notice, or obtaining its consent.

■ Finally, we reject appellant's argument that the Coxes were not parties "who may be liable" as that phrase is used in the "consent-to-settle" provision. We deem the plain wording of that phrase dispositive. The exclusionary clause does not require that the insured settle with parties who "are liable," but rather only parties that are potentially so. The Coxes clearly fall within the latter category. The settlement and release establishes that much.

AFFIRMED.