**UNITED STATES of America,**
**Plaintiff,**

v.

**CNA FINANCIAL CORPORATION and the Continental Casualty Company d/b/a the Continental Insurance Company, Defendants.**

**No. A98–285 CV.**

United States District Court,
D. Alaska.

Sept. 18, 2001.

See also 2001 WL 1329014.

---

### ORDER FROM CHAMBERS

SEDWICK, District Judge.

### I. MOTIONS PRESENTED

At docket 30, plaintiff United States of America moves for summary judgment. Defendants CNA Financial Corporation and the Continental Casualty Company d/b/a The Continental Insurance Company ("Continental") oppose the motion and cross-move for summary judgment at docket 31. Continental filed a timely request for oral argument.[1] The United States filed an additional motion at docket 40 seeking to strike certain portions of the evidence relied upon by Continental. The court issued a preliminary order on September 4, 2001, at docket 57, expressing its tentative views regarding how the pending motions should be resolved. Oral argument was held in Anchorage, Alaska, on September 12, 2001. This order is the

---

1. *See* Request for Oral Argument, docket 32.

court's final order addressing the pending motions.

## II. BACKGROUND

Except as clarified below, the court adopts its preliminary order at docket 57 for a comprehensive statement of facts and jurisdictional grounds.

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[2] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[3] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[4] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[5] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[6]

## IV. DISCUSSION

### A. Preliminary Observations

After hearing oral argument and reviewing the record once again, the court is not persuaded that its preliminary order errs in any significant respect. As prelude to the additional comments, it is necessary to emphasize four points.

First, once the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law, the non-moving party has the burden of coming forward with specific facts showing that there is a genuine issue for trial.[7] The emphasis is on specific facts showing that there is a genuine issue of material fact to be decided at trial. Generalized assertions are not sufficient to meet the non-moving party's burden. Similarly, specific facts not implicating a genuine issue of material fact are not sufficient to withstand summary judgment.

■ Second, the non-moving party must identify the evidence it is relying upon to defeat summary judgment.[8] The court has no obligation to scour the record to find support for a party's arguments.[9] Indeed, the court may grant summary judgment even if there is evidence in the record that *would* have established a genuine issue of material fact if the non-moving party fails to bring that evidence to the court's attention.[10]

Third, the non-moving party must come forward with admissible evidence.[11] Affidavits or declarations, in particular, must lay an adequate foundation and must "set forth such facts as would be admissible in evidence."[12] Hearsay or other forms of inadmissible evidence are not sufficient to defeat a properly supported motion for summary judgment.

---

**2.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**3.** *Id.* at 323–325, 106 S.Ct. 2548.

**4.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–9, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**5.** *Id.* at 255, 106 S.Ct. 2505.

**6.** *Id.* at 248–9, 106 S.Ct. 2505.

**7.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–9, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**8.** *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028–31 (9th Cir.2001).

**9.** *See id.*

**10.** *See id.*

**11.** *See* Fed.R.Civ.P. 56(c)(e).

**12.** *See* Fed.R.Civ.P. 56(e).

Fourth, as discussed in the court's preliminary order at docket 57, Continental's motion papers include incorrect citations, absent citations (conclusory statements for which Continental provided no citation), and misrepresentations or half truths. By way of illustration, Continental's motion at docket 31 represented to the court that Robert Clark, BBAHC's President and Chief Executive Officer, testified that BBAHC secured insurance from CNA because it was not sure that the FTCA would cover everything.[13] However, the cited testimony does not exactly support the stated proposition. A more precise characterization of Clark's initial testimony (as cited by Continental) is that Clark thought that the "FTCA should cover everything," but that he was not sure that it would cover "anything." [14] Perhaps more significantly, Clark also testified:

> See, we tried to get gap coverage and I think we couldn't ever get it, and I believe Lori was the one that was telling us that you just can't buy only this little bit only. You've got to buy all of it or none. And we don't know what the heck

the FTCA covers, so we have to buy some coverage. So I think that the insurance should cover, and maybe should pay for the government. I don't know. Because it's not clear one way or the other. But I don't know.[15]

Continental's motion papers neglected to include these material statements. Continental represented to the court that "Continental's underwriters have testified that the premium paid by BBAHC *was* reduced on account of the FTCA coverage . . . ." [16] However, Continental's underwriter, Wyatt–Brown, testified that the premium was *never* reduced because of the FTCA.[17] At most, the evidence suggests that Wyatt–Brown elected not to increase the premium because of the FTCA.[18] Furthermore, Continental makes frequent allusions to "contemporaneous written" documents supporting its argument that the parties never intended to cover acts or omissions covered by the FTCA or intended to exclude such acts or omissions. But Continental either provides no citations to these "contemporaneous written" documents,[19] or provides citations to documents which apparently do not exist,[20] or cites to

**13.** *See* Continental's Motion, docket 31 at p. 8 (citing deposition of Robert Clark, docket 31, Exh. P at p. 48, l. 20 to p. 49, l. 3 and p. 82, l. 21 to p. 83, l. 2).

**14.** *See* Deposition of Robert Clark, submitted at docket 31, Exh. P at p. 48, l. 24 to p. 49, l. 11. The testimony cited at pages 82–83 of the deposition does better support the summary in the briefing.

**15.** *See* Deposition of Robert Clark, submitted at docket 41, Exh. 52 at p. 139, ll. 10–18. The citations provided by the United States at docket 41 erroneously identify the page as "138." *See* Reply, docket 41 at p. 4.

**16.** *See* Continental's Opposition, docket 43 at p. 3 (emphasis in original).

**17.** *See* Deposition of Debra Wyatt–Brown, docket 30, Exh. 17 at p. 176, ll. 18–20; *see also id.* at p. 149, ll. 19–23.

**18.** Ms. Wyatt–Brown did indicate that the premium was not further increased ("debited") because of the FTCA, *see id.* at p. 176, l. 24—p. 177, l. 9; but, she also indicated that she did not participate in establishing the initial premium, *see id.* p. 179, ll. 8–12, which would have covered liability later picked up by the FTCA, so her post litigation testimony on this point does not undercut her admission that there was never any reduction, for the undisputed facts are that the premium was not reduced, and was actually increased.

**19.** *See, e.g.,* Continental's Motion, docket 31 at p. 2. Continental alludes to "contemporaneous written" documents, but provides no citation to these documents.

**20.** *See, e.g.,* Continental's Combined Opposition and Memorandum, docket 43 at p. 7. Continental cites a "December 23, 1992" letter purportedly sent from Lori Wing to pro-

documents which, upon closer scrutiny, appear to be documents prepared for other parties or other entities.[21] Indeed, as far as the court can tell, no written documentation exists to confirm any intent to not cover acts also covered by the FTCA. In fact, Wyatt–Brown testified that she likely would have documented any intention to exclude acts also covered by the FTCA.[22] Notwithstanding this, Wyatt–Brown testified that she had not seen and was not aware of any documentation memorializing an intent to exclude coverage for acts falling under the FTCA.[23] The policy which was issued did include modifications specific to BBAHC's situation in "manuscripted" endorsements, and such an endorsement could have been created to indicate that BBAHC was not covered for acts also falling within the scope of FTCA.[24] Such an endorsement is not, however, found in the policy. It therefore seems undeniably clear that, contrary to Continental's unsupported assertions suggesting otherwise, there are *no* contemporaneous documents objectively verifying any intent to exclude acts or omissions covered by the FTCA.

## B. *Did the United States meet is burden?*

For reasons discussed at length in this court's preliminary order at docket 57, the court is satisfied that the United States discharged its burden to establish that there are no genuine issues of material fact in dispute and that it was entitled to partial summary judgment as a matter of law on two issues: (1) that the United States was an implied additional insured; and (2) that Continental is liable for bad faith insurance practices.

### 1. *Implied Insured and Indemnity Claims*

■ In establishing its entitlement to summary judgment with respect to its implied insured claim, the United States primarily relied upon deposition testimony from Continental's or BBAHC's witnesses, and other undisputed evidence in the record. The relevant evidence may be quickly summarized. The insurance policy at issue in this case, HMA 9500648–5, was effective from September 30, 1993 to September 30, 1994.[25] CNA's underwriter for the policy, Debra Patricia Wyatt–Brown ("Wyatt–Brown"), testified that the premium was never reduced because of the FTCA.[26] Continental represented to the

---

spective insurers as "Exhibit A, Exhibit O to Debra Wyatt–Brown deposition and related deposition testimony . . . ." *See* Docket 43 at p. 7. However, the referenced exhibit is not submitted with Continental's motion papers.

**21.** *See* Continental's Motion, docket 31 at p. 7. Continental cites a February 8, 1991 legal memorandum "explaining 'the extent of the Federal Tort Claim Act' coverage of BBAHC liabilities." *Id.* However, the exhibit is addressed to "Navajo School Clients" and nowhere makes any reference to BBAHC. *See* Exh. L submitted with Deposition of Lori Wing, Exh. D at docket 31. Moreover, Ms. Wing could not confirm the document was one she had relied upon, although she would "bet" it was. Rather, it was counsel who represented it was from her file. *See* Docket 31, Exh. D at p. 97, ll. 14–19.

**22.** *See* Deposition of Debra Wyatt–Brown, submitted at docket 30, Exh. 17 at p. 41, ll. 7–24.

**23.** *See id.* at p. 40, l. 6 to p. 41, l. 24.

**24.** *See id.* p. 160, ll. 4–14.

**25.** A digression is necessary to address a briefing problem. Beginning on page 3 of its motion at docket 31 and continuing on to and through the following page, Continental's motion includes multiple "Id." citations to the policy. It is by no means clear, however, to what source document Continental is referring.

**26.** *See* Deposition of Debra Wyatt–Brown, docket 30, Exh. 17 at p. 176, ll. 18–20; *see also id.* at p. 149, ll. 19–23. Another digression is necessary. The United States' motion at docket 30 suffers from many of the same flaws that affect Continental's motion papers;

court that "Continental's underwriters have testified that the premium paid by BBAHC *was* reduced on account of the FTCA coverage ...." [27] However, Continental provided no cite to support this assertion, and none appears in the record. Furthermore, the policy lists numerous exclusions, none of which pertains to the FTCA. In addition, the policy contains no language indicating that the parties intended to provide coverage for risks related to activity which would not be covered by the FTCA. All witnesses agreed that, if it had been BBAHC's and Continental's intent to exclude acts or omissions otherwise covered by the FTCA, such an exclusion could have been easily written into the policy.

No contemporaneous written documentation appears to confirm any intent to not cover acts also covered by the FTCA. This factor is particularly important. Wyatt–Brown testified that she likely would have documented any intention to exclude acts also covered by the FTCA. [28] Notwithstanding this, Wyatt–Brown testified that she had not seen and was not aware of any documentation memorializing an intent to exclude coverage for acts falling under the FTCA. [29] The failure to expressly exclude coverage for claims covered by the FTCA

or to otherwise specify the scope of intended coverage is particularly relevant in that Continental admits that it had a February 1991 memorandum from BBAHC's outside counsel, S. Bobo Dean, discussing the interplay between ISDEA and the FTCA. [30] In that memorandum, Dean wrote:

> If you do choose to maintain your private comprehensive general liability policy, we recommend that your policy expressly state that this coverage insures against claims falling *outside* the scope of FTCA coverage. This may assist your private insurance company in "quantifying" your degree of risk. [31]

Thus, consistent with Wyatt–Brown's testimony, the record establishes that Continental would have included a provision or exclusion specifying that the policy did not cover acts or omissions covered by the FTCA if this was, in fact, the parties' intent. Crystal Renee Brown, CNA's 30(b)(6) witness and Vice President of Underwriting, confirmed at her deposition that the insurance policy does not declare any intent to exclude acts or omissions otherwise covered by the FTCA. [32] Brown admitted that Continental could have written such an exclusion, but did not. [33]

---

specifically, confusing or erroneous citations. By way of example, at page 18, the United States drifts between discussing Wyatt–Brown's testimony filed at docket 17 and Wing's testimony discussed elsewhere, and includes multiple "Id." citations which are difficult to track.

**27.** *See* Continental's Opposition, docket 43 at p. 3.

**28.** *See* Deposition of Debra Wyatt–Brown, submitted at docket 30, Exh. 17 at p. 41, ll. 7–24.

**29.** *See id.* at p. 40, l. 6 to p. 41, l. 24.

**30.** *See* Continental's Opposition, docket 43 at p. 13. *See also supra,* note 19. Although

Continental provides no specific citation to the source document, the context seems undeniably clear that it is referring to the 1991 Memorandum submitted by the United States as Exhibit 23 at docket 30. If this is not correct, Continental may notify the court at oral argument and clarify the discussion set forth in its motion papers at docket 43 on page 13. Absent such clarification, the court will conclude that the memorandum discussed at docket 43 on page 13 is, in fact, the 1991 Memorandum submitted by the United States as Exhibit 23 at docket 30.

**31.** *See* Docket 30, Exh. 23 at p. 4.

**32.** *See* Docket 30, Exh. 45 at p. 54, ll. 11–19.

**33.** *See id.; see also id.,* at p. 35, ll. 3–24.

Crystal Brown also testified that Continental had a duty to defend (if not necessarily indemnify) BBAHC employees acting in their FTCA capacity; that is employees deemed to be employees of the United States for purposes of the FTCA.[34] The United States was therefore clearly within the class intended to be benefitted by the policy. Finally, premiums increased from approximately $13,000 in 1989 (when the FTCA did not cover acts of BBAHC's employees) to over $19,000 in 1993 (when the FTCA covered acts of BBAHC's employees). The United States points out that, if the parties actually intended to exclude acts covered by the FTCA or to only provide coverage for gaps where the FTCA did not apply, premiums should have been reduced, not increased. Although attenuated inferences might be drawn from other evidence concerning premium rates, it is absolutely undisputed that-contrary to Continental's misleading representations in its motion papers-the premium was never reduced because of the FTCA,[35] a fact Continental's counsel should have known based on the testimony from Wyatt–Brown, CNA's underwriter for the policy.

Under the relevant principles of Alaska law discussed at length in the preliminary order, the court is satisfied that the United States qualifies as, and is, an additional implied insured entitled to the benefits of the relevant insurance policy. Accordingly, the United States is entitled to partial summary judgment on this theory.

### 2. *Bad Faith Claim*

█ As discussed at length in this court's preliminary order at docket 57, the undisputed evidence establishes that Continental repeatedly failed to accept tenders from the United States, failed to reasonably evaluate the facts and legal principles supporting the United States' position, failed to advise the United States that another policy might provide coverage, and had counsel retained for the insured (BBAHC) author an opinion letter addressing coverage issues implicating the insurer's (Continental's) rights and interests in seemingly clear derogation of ethical precepts forbidding such activity.[36] In denying tender, Continental also adopted positions which, based on the testimony of Continental's own witnesses in this case, were simply wrong. Furthermore, as already noted, Crystal Renee Brown, Continental's 30(b)(6) witness, testified that Continental had a duty to defend (if not necessarily indemnify) BBAHC employees acting in their FTCA capacity.[37] Under ISDEA, such employees are deemed to be employees of the United States for purposes of the FTCA. It is difficult to understand how Continental would admit it had a duty to defend employees of the United States, but not a duty to defend the United States.

To establish a claim for bad faith denial of coverage, a plaintiff must show that the defendant-insurer lacked a reasonable basis for denying benefits of the policy and that the defendant-insurer had knowledge

**34.** *See* Docket 30, Exh. 45 at p. 79, ll. 5–13.

**35.** *See* Deposition of Debra Wyatt–Brown, docket 30, Exh. 17 at p. 176, ll. 18–20; *see also id.* at p. 149, ll. 19–23. Another digression is necessary. The United States' motion at docket 30 suffers from many of the same flaws that affect Continental's motion papers; specifically, confusing or erroneous citations. By way of example, at page 18, the United States drifts between discussing Wyatt– Brown's testimony filed at docket 17 and Wing's testimony discussed elsewhere, and includes multiple "Id." citations which are difficult to track.

**36.** *See Chi of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113 (Alaska 1993) (retained counsel owes insured full allegiance and must be independent from insurer).

**37.** *See* Docket 30, Exh. 45 at p. 79, ll. 5–13.

that no reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim.[38] Based on the undisputed record of this case, the United States has established that it is entitled to partial summary judgment on its bad faith claim.

### C. Has Continental met its burden to rebut the United States' case?

The United States filed a motion at docket 40 seeking to strike certain evidence relied upon by Continental. The United States' motion is superfluous because, under the appropriate summary judgment analysis, the court must satisfy itself that the non-moving party comes forward with specific facts based on admissible evidence to withstand summary judgment once the moving party demonstrates that it is entitled to summary judgment. Thus, there was and is not any need for a separate "motion to strike." However, the issues and considerations raised by the United States are relevant and warrant additional commentary to explain the court's analysis and conclusions.

 A significant piece of evidence relied upon by Continental is a November 1, 1998 declaration executed by Lori Wing submitted as Exhibit B at docket 31. Wing is an officer with an insurance brokerage firm handling BBAHC's account. In her declaration, Wing advises that "[the United States' January 6, 1995 tender] took me by surprise because it has *never* been the intention of BBAHC, or Brady & Company as BBAHC's broker, to include the United States as an insured under any policy placed by Brady & Co. for BBAHC."[39] Wing also asserts, "Since I

assumed responsibility for BBAHC's account in 1988, I have had numerous discussions with attorneys and officers of BBAHC regarding BBAHC's liability exposures."[40] Wing's declaration continues:

> BBAHC provided us [legal memoranda] for the express purpose of ensuring that we obtain liability insurance to cover liability exposure not covered by the United States under Section 638 and the FTCA. In other words, BBAHC and its counsel instructed us specifically that BBAHC did not desire insurance coverage that would duplicate protection from liabilities provided by the United States under Section 638 and the FTCA.

> \* \* \* \* \* \*

> BBAHC and its counsel advised Brady & Co. orally and through their written memoranda that the very purpose of the amendments to the FTCA was to enable the United States to save large sums of money previously expended on liability insurance.

> \* \* \* \* \* \*

> BBAHC personnel advised us that we should obtain liability insurance only to cover [risks not associated with Section 638 contracts].

> \* \* \* \* \* \*

> Because the intent of the CGL policies issued by Continental Insurance Company to BBAHC was to fill in gaps in coverage extended by the United States under Section 638 and the FTCA, the premiums charged by Continental Insurance for these policies were relatively modest.[41]

---

38. *See Hillman v. Nationwide Mut. Fire Ins. Co.,* 855 P.2d 1321, 1324 (Alaska 1993).

39. *See* Declaration of Lori Wing, November 1, 1998, ¶ 4 at p. 2 (submitted as Exhibit B at docket 31) (emphasis added).

40. *See* Wing Declaration, ¶ 5 at p. 2.

41. *See* Wing Declaration, ¶¶ 6–8 at p. 3.

The United States objects to Wing's declaration. The United States argues that Wing's declaration is largely hearsay. The court agrees. Wing relates out-of-court statements from BBAHC or Continental personnel apparently for the purpose of establishing the truth of the matter asserted; specifically, that BBAHC did not intend to buy insurance for risks covered by the FTCA.

The court agrees with Continental that, stated in the abstract, some segments of Wing's declaration, and the testimony of other BBAHC witnesses (discussed below) could reflect relevant state of mind evidence concerning the parties' objective manifestations of intent at the time of contract formation. The problem, however, is that this "evidence" reflects-at best-confusion on the part of BBAHC's witnesses and *not* a defined, articulated intent. For example, Robert Clark, BBAHC's President and Chief Executive Officer, testified that different insurance options were discussed, but observed:

> See, we tried to get gap coverage and I think we couldn't ever get it, and I believe Lori was the one that was telling us that you just can't buy only this little bit only. You've got to buy all of it or none. And we don't know what the heck the FTCA covers, so we have to buy some coverage. So I think that the insurance should cover, and maybe should pay for the government. I don't know. Because it's not clear one way or the other. But I don't know.[42]

The testimony of BBAHC witnesses is addressed in greater detail further below. The only point the court is attempting to make at this juncture is that the relevant state of mind evidence relied upon by Continental reflects confusion, not a defined intent.

Furthermore, to the extent that Wing's declaration is not hearsay, it fails to establish a genuine issue of material fact with respect to any issue in dispute, because her extremely generalized statements do not demonstrate the existence of specific facts showing the existence of genuine issues of material fact. The record (reviewed in detail further below) establishes that the parties discussed and considered many potential insurance options, including policies which would effectively duplicate coverage for acts or omissions covered by the FTCA. Thus, contrary to Wing's statement that it was *"never . . . the intention of BBAHC, or Brady & Company as BBAHC's broker, to include the United States as an insured under any policy placed by Brady & Co. for BBAHC,"* [43] the actual record confirms that the opposite is true. In particular, the August 6, 1992 letter authored by Wing (discussed further below) establishes this fact.

Continental also relies on deposition testimony from S. Bobo Dean, BBAHC's outside counsel who expressed his belief that the insurance policy was intended "to make sure that in the case the FTCA did not cover something . . . they would be covered by insurance." [44] However, Dean's testimony is also hearsay-he simply relates what BBAHC and Wing told him.[45] Continental has never argued that any particular hearsay exception applies or should apply. At deposition Dean was be-

---

42. *See* Deposition of Robert Clark, docket 41, Exh. 52 at p. 139, ll. 10–18. The citations provided by the United States at docket 41 erroneously identify the page as "138." *See* Reply, docket 41 at p. 4.

43. *See* Declaration of Lori Wing, November 1, 1998, ¶ 4 at p. 2 (submitted as Exhibit B at docket 31) (emphasis added) (hereafter "Wing Declaration at _____.").

44. *See* Continental's Motion for Summary Judgment, docket 3, Exh. C at p. 95, ll. 3–5 (deposition of S. Bobo Dean).

45. *See* Docket 31, Exh. C at pp. 94–95.

ing questioned about a May 2, 2000 letter he authored (during the course of this litigation) in which he wrote, in part, "We understand that the insurance policy applicable in 1993 was obtained for the purpose of protecting BBAHC against claims outside the scope of the FTCA and that BBAHC's broker at that time has signed a declaration stating that the premium cost to BBAHC reflected the existence of FTCA coverage."[46] Unfortunately, Continental has not submitted a copy of this letter or has not identified where it can be found in the record. The basis for Dean's "understanding" is not explained.

Continental additionally depends on deposition testimony from BBAHC personnel purporting to establish what BBAHC's intent was with respect to the subject insurance policy. However, the testimony (discussed in the court's preliminary order at docket 57 at page 6) is extremely generalized and conclusory in nature. It generally consists of three witnesses simply stating that BBAHC did not intend to buy insurance duplicating FTCA coverage. These witnesses are Robert Clark, BBAHC's President and Chief Executive Officer; Liz Hartshorn, BBAHC's Chief Financial Officer; and Darrel Richardson, BBAHC's Chief Operations Officer. Significantly, the witnesses do not testify that BBAHC did *not* buy insurance that might potentially duplicate FTCA coverage. Put differently, the fact that certain BBAHC personnel may have mistakenly understood the scope of insurance does not create a genuine issue of material fact. It is possible that BBAHC personnel may have wished to secure one form of insurance, but subsequently changed their minds and opted for broader coverage in light of the uncertain nature of the law, or that

BBAHC personnel really were not sure what the policy might or might not cover, and really did not care so long as BBAHC was protected. Ultimately, the generalized and conclusory testimony of BBAHC's witnesses which is not supported by any relevant extrinsic evidence (but which *is* undermined or rebutted by other evidence in the record) is insufficient to establish a genuine issue of material fact.

Even overlooking these problems, the testimony suffers from other flaws. Most importantly, the testimony that Continental relies upon is rebutted by other admissible evidence. For example, Hartshorn testified that BBAHC did not intend to buy insurance duplicating coverage under the FTCA.[47] As noted above, Wing echoed a similar sentiment in her declaration. However, an August 6, 1992 letter sent to Liz Hartshorn from Lori Wing belies Wing's and Hartshorn's subsequent testimony.[48] In relevant part, Wing wrote:

> Just a follow up to our conversations and meetings the last few months regarding the Bristol Bay Area Health Corporation's (BBAHC) liability insurance program. *Per your request we are exploring several alternatives for BBAHC to address the liability exposures that may not be considered part of the Federal Tort Claims Act (FTCA). The easiest solution, and one we are exploring, would be for BBAHC to purchase a professional liability insurance policy as it did prior to the inception of FTCA. While this would provide the broadest financial protection, it would most likely be the most expensive.* We are also exploring the possibility of a policy that would provide indemnification and defense costs to BBAHC in the event that FTCA does not.[49]

---

**46.** *See* Docket 31, Exh. C at p. 94, ll. 6–11.

**47.** *See* Deposition of Liz Hartshorn, docket 31, Exh. R at p. 62, ll. 10–16.

**48.** *See* Exh. N submitted with Deposition of Lori Wing, Exh. D at docket 31.

**49.** *See id.* at p. 1 (emphasis added).

Thus, contrary to Hartshorn's and Wing's generalized and conclusory testimony, the August 6, 1992 letter establishes that the possibility of buying insurance potentially duplicating FTCA coverage *was*, in fact, discussed. Not only was it discussed, but this option was even identified as the "easiest solution."

What is most important in this summary judgment context is that subjective declarations of intent expressed during ongoing litigation are not probative of a party's reasonable expectations absent some relevant extrinsic evidence.[50] Continental has not pointed to any relevant, admissible, extrinsic evidence supporting the testimony of BBAHC's officers. Indeed, as noted, the relevant, extrinsic evidence that *does* exist cuts the other way.

Robert Clark, BBAHC's President and Chief Executive Officer, testified that different options were discussed, but-significantly-did *not* testify that any one option was definitely selected:

> See, we tried to get gap coverage and I think we couldn't ever get it, and I believe Lori was the one that was telling us that you just can't buy only this little bit only. You've got to buy all of it or none. And we don't know what the heck the FTCA covers, so we have to buy some coverage. So I think that the insurance should cover, and maybe should pay for the government. I don't know. Because it's not clear one way or the other. But I don't know.[51]

Wyatt–Brown testified that she likely would have documented any intention to exclude acts also covered by the FTCA.[52] Notwithstanding this, Wyatt–Brown testified that she had not seen and was not aware of any documentation memorializing an intent to exclude coverage for acts falling under the FTCA.[53]

The failure to expressly exclude coverage for claims covered by the FTCA or to otherwise specify the scope of intended coverage is particularly relevant in that Continental admits that it had a February 1991 memorandum from BBAHC's outside counsel, S. Bobo Dean, discussing the interplay between ISDEA and the FTCA.[54] In that memorandum, Dean wrote:

> If you do choose to maintain your private comprehensive general liability policy, we recommend that your policy expressly state that this coverage insures against claims falling *outside* the scope of FTCA coverage. This may assist your private insurance company in "quantifying" your degree of risk.[55]

Thus, consistent with Wyatt–Brown's testimony, the record establishes that Continental would have included a provision or exclusion specifying that the policy did not cover acts or omissions covered by the

---

**50.** *Scully v. Scully*, 987 P.2d 743, 748 n. 21 (Alaska 1999).

**51.** *See* Deposition of Robert Clark, docket 41, Exh. 52 at p. 139, ll. 10–18. The citations provided by the United States at docket 41 erroneously identify the page as "138." *See* Reply, docket 41 at p. 4.

**52.** *See* Deposition of Debra Wyatt–Brown, submitted at docket 30, Exh. 17 at p. 41, ll. 7–24.

**53.** *See id.* at p. 40, l. 6 to p. 41, l. 24.

**54.** *See* Continental's Opposition, docket 43 at p. 13. *See also supra*, note 19. Continental provides no specific citation to the source document. However, as discussed in this court's preliminary order, the context seems undeniably clear that Continental is referring to the 1991 Memorandum submitted by the United States as Exhibit 23 at docket 30. The court therefore concludes that the memorandum discussed in Continental's Opposition at docket 43 on page 13 is, in fact, the 1991 Memorandum submitted by the United States as Exhibit 23 at docket 30.

**55.** *See* Docket 30, Exh. 23 at p. 4.

FTCA if this was, in fact, the parties' intent.

In short, assuming all facts and inferences in Continental's favor, the existing record may be summarized as follows:

(1) BBAHC personnel engaged in some discussions with BBAHC's counsel and insurance broker concerning potential insurance options;

(2) The undisputed evidence before the court establishes that different options were discussed, but no evidence establishes that BBAHC reached a definite conclusion to exclude coverage for acts otherwise covered by the FTCA; in fact, no evidence exists establishing that BBAHC ever had a clear idea of the scope of insurance it was buying;

(3) Dean's memoranda, Wyatt–Brown's testimony, and Crystal Brown's testimony establish that, if Continental intended to exclude coverage for acts otherwise covered by the FTCA, the exclusion would have been written into the policy and supported by documents memorializing this intent;

(4) Notwithstanding the undisputed fact that any exclusion would have been memorialized by written documentation, the policy contains no exclusion addressing the FTCA, and there is no correspondence, memoranda or note to that effect.

Continental also relies heavily on a fact that is clearly not in dispute—the fact that the United States is not named as an additional insured in the policy. Continental's reliance on this point neglects to appreciate the correct legal principles governing additional implied insureds. One would not expect to find any declared intent to extend insurance coverage to an *implied* insured. That is why the insured is called an *implied* insured. Under Alaska law, an entity may be an implied insured even though unknown to the parties to the insurance contract and even though not in existence at the time when the insurance contract was executed.[56]

Based on the record before the court, there are no genuine issues of material fact in dispute. The United States is entitled to partial summary judgment as a matter of law regarding its implied insured and bad faith claims.

### D. *Remaining Claims and Arguments*

#### 1. *Continental's Cross–Motion for Summary Judgment*

At oral argument on September 12, 2001, Continental seemingly conceded that it was not entitled to summary judgment on any theory or claim. To the extent it did not, the court now so holds based on the preceding discussion.

#### 2. *The United States' contract-based theory*

One of the theories advanced by the United States in the underlying motions was that "it is a party to an indemnification agreement that is an insured agreement under the CNA contract with BBAHC."[57] The United States seemed to abandon the theory at oral argument in light of concerns expressed in the court's preliminary order. To the extent the United States still advocates this theory, the court declines to address it further, finding that the argument is moot in light of its holding on other issues.

#### 3. *The United States' implied indemnity theory*

The United States also argued in the alternative that it is entitled to implied indemnification. Under Alaska law, an im-

---

**56.** *See Stewart–Smith Haidinger, Inc. v. Avi–Truck*, 682 P.2d 1108, 1112 (Alaska 1984).

**57.** *See* United States' Motion, docket 30 at p. 40.

plied indemnity claim is composed of three elements: (1) the claimant discharges a legal obligation to a third party; (2) the defendant is also liable to the same third party for the same injury; and (3) as between the claimant and the defendant, the obligation should be discharged by the defendant.[58] In addition to these elements, Alaska requires the existence of a contractual relationship or other duty between the plaintiff and defendant to justify imposition of liability based on implied indemnity.[59] For the reasons set out in the Preliminary Order, the court concludes that in the context of this case the appropriate analysis is the "implied insured" analysis.

At oral argument, the United States suggested that the measure of damages might be different under the two theories. That proposition is illogical in light of the fact that under Alaska law implied indemnity requires the existence of a duty which in this case would arise from the insurance contract. Thus, under either the implied insured theory or the implied indemnity theory, the breach of duty in this case is tied to the insurance contract.

## V. CONCLUSION

For the foregoing reasons:

(1) The United States' motion at docket 30 is **GRANTED in part** and **DENIED in part** consistent with the terms of this order;

(2) CNA's motion at docket 31 is **DENIED**; and

(3) The United States' motion at docket 40 is **DENIED as moot.**

The parties shall confer and file a joint status report within 30 days of the date of this order advising the court whether issues related to damages may be resolved by agreement, further motion practice or will require trial.

---

**58.** *See Providence Washington Ins. Co. v. De-Havilland Aircraft Co. of Canada, Ltd.,* 699 P.2d 355, 357 (Alaska 1985).

**59.** *See id.*