**UNITED STATES of America,**
**Plaintiff,**

v.

**CNA FINANCIAL CORPORATION and the Continental Casualty Company d/b/a the Continental Insurance Company, Defendants.**

**No. A98285CVJWS.**

United States District Court,
D. Alaska.

July 12, 2005.

ORDER FROM CHAMBERS

[Re: Motions at dockets
151, 155, and 160]

SEDWICK, District Judge.

## I. MOTIONS PRESENTED

At docket 151, defendants CNA Financial Corporation and The Continental Casualty Company d/b/a the Continental Insurance Company ("Continental") move to dismiss for failure to state a claim. At docket 155, Continental also moves for partial summary judgment on the issues of bad faith and punitive damages. At docket 160, plaintiff United States of America ("United States") cross-moves for summary judgment in its favor on the issues of bad faith and entitlement to present a claim for punitive damages to the fact-finder at trial. All motions have been fully briefed. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

The parties are familiar with the procedural and factual background of this case. The court recites here only a general outline germane to the matters which are pending. The court incorporates the background laid out in earlier orders.[1]

At docket 57 the court entered a preliminary order[2] addressing a motion for summary judgment filed by the United States and a cross-motion for summary judgment filed by Continental. After oral argument, a final order granting the United States' motion and denying Continental's motion was entered.[3] The court held, *inter alia*, that as a matter of law the United States was an implied additional insured entitled to the benefits of the General Business Liability ("GBL") insurance policy issued by Continental to Bristol Bay Area Health Corporation ("BBAHC"); and Continental acted in bad faith when it denied coverage and refused to defend or indemnify the United States in connection with the Wilsons' personal injury claims brought against BBAHC, which the United States defended and settled under the Federal Tort Claims Act ("FTCA"). Next, the court entered an order on Continental's motion and the cross-motion of the United States addressing the issue of whether the damages recoverable by the United States were capped by the policy limits.[4] The court held that under Alaska law the United States was entitled to recover the full

1. *See,* does, 57, 61, and 87.

2. Reported as *United States v. CNA Financial Corp.,* 168 F.Supp.2d 1109 (D.Ala.2001).

3. Doc. 61, reported as *United States v. CNA Financial Corp.,* 168 F.Supp.2d 1125 (D.Ala. 2001). Because the order at docket 61 incorporated the order at docket 57, references to the order at docket 61 include the order at docket 57 except where the context clearly indicates otherwise.

4. Doc. 37, reported as *United States v. CNA Financial Corp.,* 214 F.Supp.2d 1044 (D.Ala. 2002).

amount of its damages, including those in excess of the policy limits.

Subsequently, the court addressed Continental's motion to dismiss for lack of subject matter jurisdiction and in the process reconsidered its earlier rulings.[5] The court reversed itself and held that under Alaska law the United States was not an implied additional insured under the GBL policy and Continental was entitled to summary judgment. At docket 116 judgment was entered in favor of Continental. The United States appealed. The Ninth Circuit reversed in an unpublished decision,[6] holding that under Alaska law the United States was an implied additional insured under the GBL policy.

## III. STANDARDS OF REVIEW

### A. Motion to Dismiss.

The court may dismiss an action for failure to state a claim upon which relief may be granted.[7] It is well established that "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[8] In ruling on a motion to dismiss the court must assume that all factual allegations in the complaint are true and must draw all reasonable inferences for the non-moving party.[9]

### B. Summary Judgment.

Under Federal Rule of Civil Procedure 56(c) summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[10] Facts supporting and opposing motions for summary judgment must be based on admissible evidence in affidavits, depositions, and discovery responses.[11] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[12] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[13] However, there is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[14]

## IV. DISCUSSION

### A. Motion to Dismiss.

The issue presented is whether under federal law the United States has a right to recover from Continental. Continental argues that under the Indian Self–Deter-

---

5. Doc. 115.

6. Doc. 147.

7. FED. R. CIV. P. 12(b)(6).

8. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citations and internal quotation marks omitted).

9. *United States v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir.2004).

10. FED. R. CIV. P. 56(c); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989).

11. FED. R. CIV. P. 56(e)

12. *Id.; Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir.2002).

13. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

14. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

mination and Education Assistance Act ("ISDEAA") and the FTCA the United States has no claim against Continental. The United States contends that under the law of the case doctrine, Continental is precluded from raising this issue. Alternatively, the United States argues that it is not precluded by either the ISDEAA or the FTCA from pursuing its claim against Continental.

There are two propositions which must be established for the United States' to prevail. The first proposition is that the United States is an implied insured under the GBL policy. The second proposition is that the United States has a right to recover from Continental on the insurance policy which is not foreclosed by the IS-DEAA/FTCA (assuming it is an insured under the policy). The first proposition has been established by the Ninth Circuit's decision. The law of the case doctrine controls as to that issue.[15] The second proposition has not, but citing the appellate court's statement that "the United States is properly characterized as an implied beneficiary of Bristol Bay's insurance policy, and is therefore entitled to pursue its claim against Continental,"[16] the United States maintains that it has.

 It is useful to note a limitation on the law of the case doctrine:

> The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case. The doctrine applies to both the appellate court's explicit decisions as well as those issues decided by necessary implication. *However, [t]he doc-*

*trine does not apply to issues not addressed by the appellate court.*[17]

Here the United States reads the appellate court's decision too broadly. The Ninth Circuit was presented with and decided a single issue: whether the United States was an implied additional insured under the BBAHC policy. Whether IS-DEAA/FTCA might nor permit the United States to recover from Continental was neither presented to nor addressed by the appellate court which framed its holding in these words:

> The determinative question in deciding whether to apply the implied insured doctrine is whether the risk undertaken by the insurer would be affected by implying an additional insured.[18]

The Ninth Circuit's entire discussion of the ISDEAA and liability under the FTCA focused on establishing that application of the implied insured doctrine would not increase the risk undertaken by Continental. Thus, a fair reading of the decision does not support the United States' interpretation.

For its part, Continental cites cases in which the Supreme Court considered claims for indemnity pursued by the United States. *United States v. Seckinger,*[19] involved an employee of a government contractor who, after suffering a severe electrical shock, filed a negligence suit against the United States under the FTCA. After judgment for the employee, the United States sought indemnification from the contractor based on a clause in the contract between the contractor and the government. The Court held that federal law controlled the interpretation of the con-

---

**15.** *Thomas v. Bible,* 983 F.2d 152, 154–55 (9th Cir.1993).

**16.** Doc. 147, p. 2.

**17.** *Al–Safin v. Circuit City Stores, Inc.,* 394 F.3d 1254, 1258 (9th Cir.2005) (emphasis

added; citations and internal quotation marks omitted).

**18.** Doc. 147, p. 3.

**19.** 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)

tract because it "was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution." [20] However, the case at bar is readily distinguishable from *Seckinger*. The instant matter involves an insurance contract between private parties, Continental and BBAHC, not a federal government contract.

In *United States v. Standard Oil Co. of California,* [21] the government sought to recover costs it incurred paying the medical expenses of and continued salary to a serviceman from Standard Oil whose employee's negligence had caused injury to the serviceman. The district court found for the government. The Ninth Circuit reversed and the Supreme Court affirmed, declining to either adopt state law or create a federal common law remedy allowing the government to recover. The Court deferred to Congress as the appropriate body to determine whether liability should exist for the costs incurred by the government. [22]

In *United States v. Gilman,* [23] a government employee driving a government vehicle was involved in an accident with another person who successfully sued the United States. The government then filed suit for indemnification against its employee. Applying state law, the district court found the employee liable. The Ninth Circuit reversed and the Supreme Court affirmed, declining to apply state law favoring indemnity. In so doing, the court

first noted that the FTCA did not expressly grant a right of indemnification from an employee. Because the issue involved a policy decision affecting the "complex of relations between federal agencies and their staffs," the matter of the appropriate policy to be adopted was a legislative not a judicial function. The Court also relied upon the legislative history of the FTCA, which indicated that Congress did not intend to allow the government to sue its employees for indemnity or contribution. [24]

■ Like *Seckinger, Gilman* and *Standard Oil* are distinguishable from the case at bar. Here, the United States is not attempting to recover from its employee or a third-party tort-feasor, it is seeking recovery as an additional insured under an insurance policy issued to BBAHC, the entity that was the employer. Nothing in the FTCA, its legislative history, or the case law cited by Continental forecloses the United States from recovering on an insurance policy under which it is an insured, express or implied.

Continental also argues that "[w]here Congress desires the United States to have a claim against an insurer for claims paid by the United States to injured parties, Congress has expressly so provided," citing several statutes. [25] This argument also fails because this case does not involve third-party liability or insurers of third-parties; it involves an insurance policy un-

---

**20.** *Id.* at 209–10, 90 S.Ct. 880. The identical result based on the same reasoning was reached in another case cited by Continental, *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). That case involved rights and liabilities under negotiable instruments issued by the United States.

**21.** 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)

**22.** *Id.* at 316–17, 67 S.Ct. 1604

**23.** 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954)

**24.** *Id.* at 511–13, 74 S.Ct. 695.

**25.** 5 U.S.C. § 8131 ("Compensation for Work Injuries"); 10 U.S.C. § 1095(a)(1) ("CHAMPUS"); 25 U.S.C. § 1621(e)(a) ("Indian Health Care Improvement Act"); 38 U.S.C. § 1729(a)(1) ("Veteran's Benefits"); 42 U.S.C. § 1395y(b)(2)(B)(ii) ("Medicare as Secondary Payer"); 42 U.S.C. § 2651(a) ("Medical Care Recovery Act").

der which the United States is an insured, albeit an implied insured.

Continental misconstrues *United States v. Aetna Casualty & Surety Co.*[26] *Aetna* neither stands for nor supports the proposition that if Continental had paid the claim it could recover from the United States. The facts in *Aetna* are markedly different from those in the case at bar.[27] In *Aetna*, an employee of the Federal Reserve Bank was injured through the negligence of a Post Office employee. Aetna, the worker's compensation carrier for the Federal Reserve Bank, paid the injured employee's worker's compensation claim. Aetna, as the subrogee by operation of law to the claim of the injured employee, then brought suit against the United States under the FTCA to recover the amounts it paid. The issue before the Supreme Court was whether the anti-assignment statute precluded a subrogee from bringing an action against the United States in its own name under the FTCA. In contrast to the case bar Aetna was not attempting to deny coverage under a policy insuring the United States. Rather, Aetna sued an agency of the United States under the FTCA to recoup the benefits it had paid to the injured employee of another agency of the United States, just as it would be entitled to do if the injury were caused by a private sector entity.

Not only is *Aetna* distinguishable on its facts, but Continental's attempt to rely on it depends on twisted logic which would produce an absurd result. The liability of the United States under the FTCA is determined in the same manner as is that of a private person under the law of the place where the act or omission occurred.[28]

Nothing in Alaska law provides that an insurer who pays a claim against its insured under a liability policy is subrogated to the rights of the injured party against the insured. Indeed, because such a rule of law would literally negate the purpose of liability insurance, an absurd result. In sum, there is nothing in or about the FTCA which would foreclose the United States' claim against Continental.

Next, the court looks to the ISDEAA to determine if it precludes recovery by the United States. The issue is whether the ISDEAA would preclude BBAHC from voluntarily acquiring a liability policy with coverage coextensive with the liability assumed by the United States under ISDEAA or would void any such policy.

The court agrees with most of the policy arguments advanced by Continental, but not with Continental's ultimate conclusion. The court agrees that when Congress made the FTCA the exclusive remedy for claims against tribal entities providing services under ISDEAA contracts, the United States effectively assumed liability for claims failing within the FTCA. The court also agrees that the United States could not seek indemnification from BBAHC, nor could it compel BBAHC to obtain liability coverage for acts that would fall within the scope of the FTCA. The court further agrees that a primary concern addressed by Congress was reducing financial burdens on tribal entities providing services under ISDEAA. However, none of these policy arguments requires the result Continental seeks. The United States is not seeking to recover from BBAHC. The United States did not compel BBAHC to purchase insurance. Allowing the Unit-

---

**26.** 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949).

**27.** The facts in *Aetna* are more fully set out in the decisions of the lower courts reported at 76 F.Supp. 333 and 170 F.2d 469.

**28.** 28 U.S.C. § 1346(b)(1); *Whisnant v. United States,* 400 F.3d 1177, 1180 (9th Cir.2005).

ed States to assert a claim against Continental does not endanger tribal resources, put tribal assets at risk, or contravene the purposes of ISDEAA. While BBAHC may have purchased coverage that was unnecessary,[29] BBAHC chose to make the purchase. Subsequent action by the United States to avail itself of benefits already purchased by BBAHC in no way caused or increased the expenditure.[30] As the Ninth Circuit observed, if the policy were intended to cover only those liabilities not subsumed by the FTCA, the policy should have excluded FTCA liabilities. Instead, the policy includes coverage which may have been unnecessary, but for which BBAHC paid a premium.[31] As the Ninth Circuit aptly stated: [32]

> Under Continental's interpretation of the United States' relationship to the policy, Continental could never incur liability under Bristol Bay's policy. Such a result is inherently inequitable; indeed, it would be inimical to public policy to permit insurance policies which insure nothing. On the other hand, deeming the United States to be an implied insured, and thereby obligating Continental to compensate the United States for damages arising from the negligence of Bristol employees, is inherently equitable: the United States gets the benefit of an insurance policy which by its own terms covered losses for which the United States was exclusively liable; and Continental is precluded from a "windfall" whereby it "escape[s] liability for protection it was paid to provide."

The amendments to ISDEAA shifting the liability for tort claims from the contracting tribal entity to the federal government were intended for the benefit of the tribal entities, not their insurance carriers. To the extent that Continental does not want to underwrite and collect a premium for insuring the United States, the solution is simple; it can write policies that exclude liability for claims covered by the FTCA.

Continental's argument that the implied additional insured doctrine should not be adopted as part of the federal common law misses the mark. Neither this court nor the Ninth Circuit is adopting the implied additional insured doctrine pursuant to federal common law; rather the courts are applying Alaska law to the insurance policy at issue in this case. If, as Continental argues, the Ninth Circuit's interpretation of Alaska law is "out in left field on this doctrine" and its application to the facts of this case truly is debatable, Continental should have sought a rehearing en banc before the Ninth Circuit or filed a petition for *certiorari* with the Supreme Court.

**29.** *See* 25 U.S.C. § 450f(c), which makes the Secretary responsible for obtaining or providing liability insurance for tribal organizations carrying out ISDEAA contracts.

**30.** *Atkinson v. Haldane*, 569 P.2d 151 (Alaska 1977), cited by Continental, is inapposite. First, this not an action against BBAHC, therefore tribal sovereign immunity is not at issue. Second, *Atkinson* was concerned with the expenditure of tribal funds, but here the expenditure likely came from program funds provided by the United States under the ISDEAA contract.

**31.** Continental has not introduced evidence that the premium was lowered as a result of the shift of liability from BBAHC to the United States. The logical inference from Continental's failure to introduce such evidence is that Continental did not intend to exclude coverage for FTCA claims. In contrast there is evidence that the GBL policy premium increased substantially after the amendments to the ISDEAA reduced BBAHC's exposure: $13,332 for 1989–90 (the policy in effect immediately prior to the ISDEAA amendments) to $19,346 for 1993–94 (the policy in effect at the time of the claim), a 45% increase [Docket 30, Exh. 18, 30].

**32.** Doc. 147, pages 1–5 (citation omitted).

This court may not disregard the appellate court's interpretation of Alaska law.

### B. Summary Judgment.

Continental's motion for partial summary judgment and the cross-motion filed by the United States place identical issues before the court. Continental argues that under Alaska law the United States, as an implied additional insured, is not entitled to recover more than the policy limits. Alternatively, Continental argues that because the issue of whether the United States was an implied additional insured is "fairly debatable," as a matter of law it could not have acted in bad faith or be subjected to punitive damages. The United States disagrees on both issues and argues that as a matter law Continental acted in bad faith, the United States is entitled to recover more than the policy limits and punitive damages should be determined by a jury. The United States also argues that under the law of the case doctrine these issues have already been determined in the court's orders at dockets 61 and 87.

If as the United States contends, reversal of the order entered at docket 115 restored the *status quo ante*, the orders entered at dockets 61 and 87 represent the law of the case. If, on the other hand, as Continental argues, the order at docket 115 vacating the order entered at docket 61 vacated it in its entirety, the slate has been wiped clean and the issues raised by the motion and cross-motion are before the court *de novo*.

■ The order at docket 61 denied Continental's motion for summary judgment and granted the motion of the United States holding that: (1) the United States was an implied additional insured; and (2) Continental acted in bad faith in declining to defend and indemnify the United States under the policy. Subsequently, in the order at docket 87 the court held that the United States was entitled to recover damages in excess of the policy limits. The rulings that Continental acted in bad faith and recovery by the United States was not limited by the policy limits were predicated upon a determination that the United States was an implied additional insured under the GBL policy. That critical underpinning was restored when the Ninth Circuit held that as a matter of law the United States was an implied additional insured under the policy. The effect of the Ninth Circuit's decision was to vacate the order at docket 115, thereby restoring the *status quo ante, i.e.,* the orders at dockets 61 and 87.[33]

■ Given that the orders at dockets 61 and 87 establish the law of the case, the court will treat the motion for summary judgment at docket 155 as a motion for reconsideration of the orders at dockets 61 and 87 and the cross-motion at docket 160 as an opposition to reconsideration. The law of the case doctrine is not a shackle without a key. When a district court has jurisdiction over a lawsuit, it possesses inherent power to reconsider, alter, or rescind its interlocutory orders for reasons which it finds sufficient.[34] That inherent power is not, however, plenary or unfettered. The Ninth Circuit has explained:

> Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.[35]

---

**33.** Although it did not mention the order at docket 87, the order at docket 115 and the final judgment entered at docket 116 abrogated the order at docket 87 *sub silentio*.

**34.** *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir.2001)

**35.** *School District No. 1J, Multnomah County Oregon v. ACandS, Inc.,* 5 F.3d 1255, 1263

In the case at bar only the second ground, clear error or manifest injustice, could apply.

Continental argues that under Alaska law an implied additional insured is limited to the policy limits and cannot bring a bad faith claim, so the decision was clearly in error. There being no Alaska Supreme Court decision on point, this court must endeavor to predict how the Alaska Supreme Court would decide the issue were it presented to that court.[36] This court starts with the basic proposition that the Alaska Supreme Court would "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[37]

Continental argues that under *Avi–Truck*,[38] the United States is limited to recovery of policy limits. This argument is based on the fact that the judgment affirmed in *Avi–Truck* was for policy limits and the Alaska Supreme Court referred solely to the right to recover the proceeds of the policy. While *Avi–Truck* does not specifically authorize recovery in excess of policy limits, neither does *Avi–Truck* preclude recovery in excess of policy limits. The issue was not before the court.[39]

■■■ In its reply, Continental argues that as an implied additional insured the United States is not a party to the insurance contract. Although difficult to follow, Continental's argument seems to be based on the theory that as an *implied* additional insured, the relationship between the United States and Continental is based upon a quasi-contract or contract implied in law, not on the insurance policy. There is no quasi-contract or contract implied in law present in this case.[40] What Continental fails to appreciate is that under the Ninth Circuit's ruling, the United States is an implied additional *insured* to a contract that clearly exists in fact. As an insured, the rights of the United States are necessarily defined by the terms of the policy under which it is insured. Conversely, the duties and obligations of Continental are likewise defined by the terms of the policy. Nothing in *Avi–Truck* or any other decision cited by Continental supports the proposition that the rights of an insured under a policy differ depending on whether the insured is a named insured, a person falling within a class of persons deemed to be insureds, or an implied additional insured.[41] In the absence of any precedent, reason or policy which would support treating one type of insured differently from the other, this court concludes that if the question were presented to it, the Alaska Supreme Court would hold that an

(9th Cir.1993).

**36.** *Capital Development Co. v. Port of Astoria,* 109 F.3d 516, 519 (9th Cir.1997).

**37.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**38.** *Stewart–Smith Haidinger, Inc. v. Avi–Truck, Inc.,* 682 P.2d 1108 (Alaska 1984).

**39.** The same is true of the other two cases cited by Continental, *Farmers Insurance Exchange v. Nelson,* 479 S.W.2d 717 (Tex.Civ. App.1972) and *Taylor v. Audubon Insurance Co.,* 357 So.2d 912 (La.App.1978).

**40.** Quasi-contract is a legal fiction based upon the proposition that one unjustly enriched by a benefit conferred upon him by another is required to pay the value of the benefit conferred. *See White v. Alaska Insurance Guaranty Ass'n,* 592 P.2d 367, 370 n. 5 (Alaska 1979). The elements of quasi-contract are not present here. Nor does this case involve a contract implied in law. The insurance contract clearly exists in fact; the contract is not implied, rather the United States is *impliedly a party to an actual contract.*

**41.** This result is consistent with the general rule that the rights and duties of the parties under an implied contract are identical with those imposed under an express contract. *See* RESTATEMENT (SECOND) CONTRACTS (1981), § 4, cmt a.

implied additional insured may, in circumstances where a named insured might do so, recover more than policy limits and bring a bad faith claim against the insurer.

Continental also argues that application of the implied additional insured doctrine was "fairly debatable," so it was clearly erroneous and manifestly unjust to have concluded that Continental acted in bad faith. Arguing that this court and the dissenting Ninth Circuit judge found that the implied additional insured doctrine did not apply, Continental says the issue obviously was "fairly debatable." It follows, says Continental, that under the Alaska Supreme Court's decision in *Hillman II*,[42] as a matter of law Continental could not have acted in bad faith.

*Hillman I*,[43] arose from an accident which occurred when the Hillmans' minor daughter was riding an ATV owned by the Hillmans on a public road. The child was hit and killed by an uninsured motorist. At the time of the accident the Hillmans were insured by an automobile policy issued by Nationwide. The policy listed three owned vehicles, but did not list the ATV. The policy excluded injury resulting from the operation of a motor vehicle owned by the insureds but not covered under the policy. The policy definition of "motor vehicle" included "[o]ther motor vehicles designed for use off public roads are covered when used on public roads." The Hillmans made a claim against Nationwide under the policy's uninsured motorist clause. Nationwide denied the claim based on its interpretation that the ATV was a motor vehicle as defined in the policy within the scope of the owned but uncovered vehicle exclusion. The Alaska Supreme Court held that Nationwide's interpretation of the policy was the "only reasonable interpretation."[44] The court then found that the exclusion was invalid on statutory and public policy grounds.[45] Two Justices disagreed that the exclusion was invalid.[46] In *Hillman II* the question was whether Nationwide was unreasonable in treating the exclusion as valid. The court, over the dissent of two justices, held that because two justices dissented and a respectable minority of courts had reached an opposite result on the invalidity issue, Nationwide's position was not unreasonable. Therefore, its denial did not lack a reasonable basis.[47]

■ However, *Hillman II*, does not compel the conclusion that Continental did not act in bad faith when it rejected the tender of defense. To begin with, the facts in the case at bar are markedly different. First, unlike Nationwide, Continental did not rely on an express exclusion in the policy. Instead, Continental relied on a policy omission, *i.e.*, the United States was not a named insured in the policy. Second, unlike the holding describing Nationwide's rejection of coverage, relied on in *Hillman II*, the interpretation by Continental in this case is not the "only reasonable interpretation" of the policy; indeed, as the Ninth Circuit held, Continental's interpretation is incorrect. Third, as noted in the order at docket 57,[48] Continental denied the duty to defend as well as the duty to indemnify notwithstanding the fact that Continental's Rule 30(b)(6) witness testified that Continental had a duty to defend (if not indemnify) BBAHC's em-

---

42. *Hillman v. Nationwide Mutual Fire Insurance Co.*, 855 P.2d 1321 (Alaska 1993).

43. *Hillman v. Nationwide Mutual Fire Insurance Co.*, 758 P.2d 1248 (Alaska 1988).

44. *Id.*, at 1250.

45. *Id.*, at 1251–53.

46. *Id.*, at 1255 (Burke, J. joined by Moore, J., dissenting).

47. *Hillman II* at 1325–25.

48. Docket 57, p. 8 [168 F.Supp.2d at 1115].

ployees acting in their FTCA capacity (deemed under the ISDEAA to be employees of the United States). It is difficult to understand how Continental would admit a duty to defend its employees but not the United States itself.[49] Fourth, in denying coverage, Continental asserted that the subjective intent of Continental and BBAHC was to exclude coverage for those acts that would fall within the FTCA. Yet, as noted above and in the order at docket 57,[50] this assertion is unsupported by the evidence.

The precise issue before this court and the Ninth Circuit on appeal with respect to the underlying coverage issue was predicting whether the Alaska Supreme Court would extend the *Avi–Truck* implied additional insured doctrine to liability as well as casualty insurance. The answer to that question was, at least in part, dependent upon the applicability of *Olympic, Inc. v. Providence Washington Insurance Co. of Alaska*,[51] in which the Alaska Supreme Court declined to extend the implied additional insured doctrine it had previously adopted for a casualty policy[52] to a liability policy. In essence, Continental's position in the case at bar is that, in light of the decision of this court and the dissent in the Ninth Circuit, the earlier Alaska Supreme Court decision in *Olympic* should be considered controlling so that it was reasonable to conclude that *Avi–Truck* would not be extended.

 The flaw in Continental's argument is that it did not articulate as a reason for denying either coverage or a defense that *Avi–Truck* was limited by *Olympic* and that the implied additional insured doctrine did not apply to liability insurance policies. It is the opinion of this court that the Alaska Supreme Court, in determining whether an insurer has acted in bad faith, would look to the reasonableness of the reason articulated for denying coverage, not to a *post hoc* rationale first fully articulated in litigation over the rejection of the insured's tenders. An insurer is not only required to give prompt notice to the insured of its decision to deny coverage and defense, its notice must also "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim."[53] It is the explanation that the insurer provides the insured for denying coverage that must be reasonable; if that explanation is unreasonable the fact the insurer may have had an unarticulated reasonable explanation is irrelevant. Not only was Continental dilatory in responding to the tenders by the United States, but the reasons articulated by Continental as the basis for denying coverage and a defense did not provide a reasonable explanation for rejecting the tenders by the United States.

The failure to set forth an adequate explanation for rejecting the tenders is a fundamental difference between the case at bar and *Hillman II*. There, Nationwide's interpretation of the policy itself,

**49.** Under Alaska law, the duty to defend and duty to indemnify are separate. *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1115 (Alaska 1993). Although Continental continues to argue that it had no duty to defend, it offers no evidence to contradict the deposition testimony of its Rule 30(b)(6) witness.

**50.** Docket 57, pp. 8–10, 15–16, 24 [168 F.Supp.2d at 1115–16, 1118–19, 1124].

**51.** 648 P.2d 1008 (Alaska 1982).

**52.** *Alaska Insurance Co. v. RCA Alaska Communications, Inc.*, 623 P.2d 1216 (Alaska 1981).

**53.** *Sauer v. Home Indemnity Co.*, 841 P.2d 176, 182 (Alaska 1992) (quoting from a statute. AS 21.36.125(a)(15)).

*articulated from the beginning,* was the only reasonable interpretation; it was only the later holding of the Alaska Supreme Court rendering the policy provision invalid that made Nationwide's position incorrect. Unlike Nationwide in *Hillman,* which consistently expressed and stuck with a manifestly reasonable interpretation of the controlling provision in its insurance policy, Continental's interpretation of the scope of coverage and its duty to defend under its policy has never been correct.

 Continental's position is further undercut by the fact that it denied a defense as well as indemnity despite the fact that its own personnel believed it had a duty to defend. Where the insurer owes a duty to defend but denies coverage, the appropriate course of action is to provide a defense under a reservation of rights, thereby preserving its right to disclaim coverage if its coverage defense is either acquiesced to by the insured or determined to be valid.[54] Continental did not avail itself of this procedure.

 Punitive damages may be awarded for conduct that is outrageous, including acts done with malice or bad motive, or that evidences reckless indifference.[55] Continental's argument that the United States is not entitled to punitive damages mirrors its bad faith argument, *i.e.,* the debatable issue of coverage under an unsettled implied additional insured doctrine. In Continental's view, it necessarily follows that the denial of coverage was not outrageous as a matter of law. The court rejects this argument for the same reasons as stated above on Continental's bad faith arguments. Based on the facts of this case, a jury could find that Continental's rejection of the United States' tenders was outrageous or done with reckless indifference.

## V. CONCLUSION

For the reasons set forth above, Continental's motion to dismiss at docket 151 is DENIED, Continental's motion for partial summary judgment at docket 155 is DENIED, and the United States' motion for summary judgment at docket 160 is GRANTED.

## VI. ORDER TO CONFER AND SUGGEST TRIAL DATES

It appears to the court that it is now appropriate to set a date for trial of the remaining issues in this case. Accordingly, counsel shall confer and within thirty days from the date of this order file a joint status report which (1) reports on the prospects for settlement, (2) identifies all issues which either party believes must be resolved at trial, (3) sets out the parties' best estimate as to the length of trial, and (4) suggests at least two trial dates convenient to all parties, neither of which dates should be earlier than December 19, 2005.

---

**54.** *See CHI of Alaska, Inc.,* 844 P.2d at 1115–16.

**55.** A.S. § 09.17.020(b).